UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1: 17-CV-00003-HBB

BETH E. PIPPIN                  PLAINTIFF

VS.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security             DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Beth E. Pippin ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 15) and Defendant (DN 18) have filed a Fact and Law Summary. For the reasons that follow, judgment is granted for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11). By Order entered March 29, 2017 (DN 10), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

1

FINDINGS OF FACT

On October 10, 1996, Plaintiff filed an application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (the Act) (Tr. 89). [1] The state agency denied Plaintiff's application at the initial and reconsideration levels (Id.). Following an administrative hearing on April 9, 1998, the Administrative Law Judge issued a decision finding that Plaintiff was not disabled (Id.). Plaintiff filed a request for review of the Administrative Law Judge's decision (Id.).

While Plaintiff's request for review was pending before the Appeals Council, she filed a subsequent application for SSI on May 21, 1998 (Tr. 89). The state agency issued a favorable determination in September 1998, finding that Plaintiff had been disabled since May 21, 1998 (Id.). Thus, Plaintiff became eligible for SSI benefits on June 1, 1998 (Id.).

On December 21, 1999, the Appeals Council remanded Plaintiff's October 10, 1996 application to an Administrative Law Judge for further consideration (Tr. 89). The remand order indicated that Plaintiff's award of disability in her subsequent application was supported by substantial evidence that amounted to new and material evidence relating to the period at issue in the first application (Id.). On remand, the Administrative Law Judge considered the closed period between October 10, 1996 (the original alleged onset date) and May 31, 1998, the day before Plaintiff became eligible for SSI (Id.). In a decision dated June 16, 2000, the Administrative Law Judge issued a favorable decision finding that Plaintiff was entitled to SSI benefits between October 1996 and May 1998 (Tr. 89-93). More specifically, at the second step the Administrative

---

1 The underlying documents related to Plaintiff's 1996 application are not part of the administrative record. Accordingly, the citations refer to the Administrative Law Judge's June 2000 decision, which discussed the procedural history.

Law Judge found that Plaintiff had the following severe impairments: degenerative joint disease, a seizure disorder, a depressive disorder, and anxiety disorder, borderline personality disorder, and borderline intellectual functioning (Tr. 92). At the fourth step, the Administrative Law Judge determined that Plaintiff had the following residual functional capacity during the relevant period:

> She was mildly limited in her ability to understand, retain, and follow simple instructions. She had moderate difficulties sustaining attention and concentration to perform repetitive tasks. Her ability to relate to co-workers and others was impaired. Her capacity to tolerate the stress and pressure of daily work activity was moderately to severely impaired.

(Tr. 92-93). The Administrative Law Judge found that Plaintiff was unable to perform the requirements of her past relevant work during the relevant period (Tr. 93). At the fifth step, the Administrative Law Judge considered Plaintiff's age, education, past work experience, and residual functional capacity (Id.). The Administrative Law judge concluded due to Plaintiff's non-exertional limitations she could not make an adjustment to any work that existed in significant numbers in the national economy during the relevant period and, therefore, reached a finding of disabled under the medical-vocational guidelines (Id.). However, Plaintiff reports that her SSI benefits ceased in 2005 when her husband apparently began receiving Disability Insurance Benefits (DIB) (DN 15 PageID # 1568 n. 1).

On May 6, 2015, Plaintiff filed an application for DIB (Tr. 15, 285-86). Plaintiff alleged that she became disabled on September 30, 2013, as a result of epilepsy, blood clot in the right leg, migraine headaches, nerve damage in the head, sleep apnea, fibromyalgia, back disorders, emphysema, allergies, edema, acid reflux, abdominal pain, depression, anxiety, panic attacks, and obesity (Tr. 15, 421-22). Administrative Law Judge Candace A. McDaniel ("ALJ") conducted a video hearing from Louisville, Kentucky (Tr. 15, 37-39). Plaintiff and her attorney, Richard

3

Burchett, participated from Bowling Green, Kentucky (Id.). William R. Harpool also participated and testified as an impartial vocational expert (Id.).

In a decision dated July 11, 2016, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 15-26). Notably, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018 (Tr. 17). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 30, 2013 the alleged onset date (Id.). Next, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; obesity; degenerative osteoarthritis of the knees with a history of total arthroplasty surgery bilaterally; a seizure disorder; a depressive disorder; and an anxiety disorder (Id.). Additionally, the ALJ found that Plaintiff's deep vein thrombosis in the right leg, cholecystitis, hysterectomy, and fibromyalgia are "non-severe" impairments (Tr. 17-18). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 18). The ALJ specifically found that plaintiff did not meet or medically equal the criteria for listings 1.03, 1.04, 11.02, 11.03, 12.04, and 12.06 (Tr. 18-20).

At the fourth step, the ALJ made the following finding with regard to Plaintiff's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) in that the claimant can lift and carry up to 10 pounds occasionally, lift and carry a little less than 10 pounds such as 8 pounds frequently, sit for six of eight hours, and stand or walk for three out of eight hours; no more than occasional pushing and pulling with the upper extremities as well as no more than

> occasional pushing and pulling with the lower extremities; no climbing of ladders, ropes, or scaffold [sic]; only occasional climbing of ramps or stairs, occasional stooping, kneeling, crouching, or crawling; able to balance when walking on level ground but need to avoid uneven or slippery surfaces, and would need to use a cane when ambulating for distances of more than 10 or 15 feet; no exposure to hazardous work settings including unprotected heights, operation of machinery with open and exposed moving parts or gears that do not stop with loss of human contact or control, no commercial driving, and no exposure to large bodies of water; avoid exposure to concentrate [sic] levels of vibrations, and concentrated levels of fumes, odors, dusts, gases, poor ventilation, wetness and humidity, and extreme temperatures of cold or heat; is able to understand, remember and carry out simple routine instructions; has adequate attention and concentration for two hours [sic] over an eight hour workday, interact with coworkers and supervisors frequently, with no more than occasional contact with the public not incidental to work activities, and is able to adapt to routine changes in such a setting.

(Tr. 20). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of her past relevant work (Tr. 24).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 25-26). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 26). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from September 30, 2013 through the date of the decision, July 11, 2016 (Id.).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 8-10). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

## The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

> 5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

## Challenged Findings

Plaintiff disagrees with Finding Nos. 3 and 5 which, respectively, set forth her "severe" impairments and residual functional capacity (DN 15 PageID #1568-69, 1572). Plaintiff challenges Finding No. 4 which addresses whether she has an impairment that meets or equals a listing in Appendix 1 (Id. PageID # 1570-72). Plaintiff also disagrees with Finding Nos. 10 and 11 (Id. PageID # 1573).

## A

1. Plaintiff's Argument

Plaintiff contends that Finding Nos. 3 and 5 are not supported by substantial evidence because they do not comport with the Sixth Circuit's holding in <u>Drummond v. Comm'r of Soc. Sec.</u>, 126 F.3d 837 (6th Cir. 1997) and the Agency's policy in Acquiescence Ruling 98-4(6) (DN 15 PageID #1568-69, 1572). Plaintiff explains that the ALJ failed to discuss the severe impairment and residual functional capacity ("RFC") findings set forth in the June 16, 2000 Administrative Law Judge decision, and the ALJ did not consider whether there is new and material evidence to support a different conclusion regarding her current severe impairments and residual functional capacity. Specifically, Plaintiff is referring to the earlier determinations that she suffers from borderline personality disorder and borderline intellectual functioning, the impairments are severe, and they impose non-exertional limitations of moderate to severe

impaired capacity to tolerate stress and pressure of daily work activity and moderate difficulty maintaining attention and concentration to perform repetitive tasks (Tr. 92-93).

2. Defendant's Argument

Defendant asserts that Drummond and AR 98-4(6) do not apply to the case at hand because they apply only to disability claims arising under the same title (DN 18 PageID 3 1582-83). Defendant explains that the June 2000 decision awarded SSI under Title XVI of the Act, whereas the instant action involves a claim for DIB under Title II of the Act. Defendant asserts that the ALJ was not obligated to consider or adopt the findings from the 2000 decision or apply the holding in Drummond and AR 98-4(6) because the current application involves a different title of the Act. Additionally, Defendant points out that Plaintiff has not cited any evidence from the relevant period documenting the presence of borderline intellectual functioning and borderline personality disorder. Defendant notes that in July 2015, a consultative examining psychologist diagnosed a depressive disorder and generalized anxiety disorder but did not indicate any other more severe intellectual or cognitive impairments (Tr. 1025).

3. Discussion

In Drummond, the Sixth Circuit held that the doctrine of res judicata applies to the Commissioner's final decision concerning a claimant's application for disability benefits. 126 F.3d at 842. As a result, absent substantial evidence of an improvement in the claimant's condition, an Administrative Law Judge addressing a claimant's subsequent application for disability benefits is bound by the findings of fact in the previous final decision of the Commissioner. Id. at 842-43.

The first Administrative Law Judge's decision, in Drummond, addressed the time period July 6, 1987 through July 28, 1988 and found at the fifth step that the claimant was not entitled to DIB because she was classified as a "younger" individual (age 49) and retained an RFC for "sedentary" work. Id. at 838. The second Administrative Law Judge's decision addressed the time period July 28, 1988 to August 2, 1990 and found at the fourth step that the claimant was not entitled to DIB because she retained the RFC for "medium" work and could perform her past relevant work. Id. at 839. However, by then the claimant was classified as a "person approaching advanced age" because she was between 50 and 54 years old. Id.

The Sixth Circuit noted that if the claimant had been determined to have an RFC limited to sedentary work, as was decided in the first determination, then she would have been entitled to DIB under the regulations because of the combination of her age classification and RFC. Id. The Sixth Circuit found that substantial evidence had not been introduced demonstrating that her condition improved significantly between the two hearing dates. Id. at 843. Through the application of res judicata, the Sixth Circuit held that the second Administrative Law Judge was bound by the prior determination that the claimant retained the RFC to perform sedentary work. Id. Due to the claimant's change in age at the time of her second application and her RFC for sedentary work, the Sixth Circuit found her eligible for DIB. Id.

In light of Drummond, the Commissioner issued AR 98-4(6) directing states within the Sixth Circuit to follow that holding. In pertinent part, the Acquiesence Ruling explained:

> When adjudicating a subsequent disability claim with an unadjudicated period arising **under the same title** of the [Social Security] Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material

10

> evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98–4(6), 1998 WL 283902, at *3 (June 1, 1998) (emphasis added). Although Drummond involved a title II case, AR 98-4(6) recognizes that "similar principles also apply to title XVI cases." Id. n. 1. Therefore, AR 98-4(6) directs that the "Ruling extends to both title II and title XVI disability claims." Id.

Here, the June 16, 2000 decision addressed Plaintiff's application for SSI under Title XVI of the Act. By contrast, the July 6, 2016 decision dealt with her application for DIB under Title II of the Act. Thus, the later decision adjudicated a subsequent disability claim arising under a different title of the Act. Defendant asserts that Drummond and AR 98-4(6) do not apply because they are limited to an adjudication of claims arising under the same title. The undersigned finds this argument without merit.

On at least two occasions, the Commissioner has unsuccessfully relied on AR 98-4(6) to argue that Drummond should not be applied to a subsequent disability claim under title II because the previous claim was brought under title XVI. *See* McClain v. Comm'r of Soc. Sec., No. 12-11172, 2013 WL 5182089, at *11 (E.D. Mich. Sept. 13, 2013) and Kaufman v. Astrue, No. 3:10-CV-1067, 2011 WL 3862350, at 11 (N.D. Ohio Aug. 22, 2011), *adopted by* 2011 WL 3862345 (N.D. Ohio 2011) Both courts concluded that while AR 98-4(6) recognizes that the Drummond holding applies with equal force to title II and XVI claims, the Ruling fell short of addressing whether it applies to a title II claim when the previous claim was a title XVI claim. McClain, 2013 WL 5182089, at *11; Kaufman, 2011 WL 3862350, at *5. Reasoning that the determination is identical under both titles, the courts applied Drummond. McClain, 2013 WL

5182089, at *11; Kaufman, 2011 WL 3862350, at *5.  This Court agrees with McClain and Kaufman because the regulations for assessing disability claims under titles II and XVI are identical (compare 20 C.F.R. §§ 404.1502-404.1576 with 416.902-416.976), and placing such an artificial limitation on the rule in Drummond will fundamentally gut and render meaningless the Sixth Circuit's holding that, absent changed circumstances, the principles of res judicata apply to the Commissioner's final decisions on disability claims.  Drummond, 126 F.3d at 840-43.

Additionally, in contrast to AR 98-4(6), Drummond does not expressly or implicitly limit the holding to adjudication of disability claims under the same title of the Act.  126 F.3d at 840-43.  Thus, to the extent that AR 98-4(6) is inconsistent with Drummond, this Court will follow Drummond because Sixth Circuit precedent is controlling.  *See* McClain, 2013 WL 5182089, at *11; Harris v. Astrue, No. 3:09-CV-00260, 2010 WL 3909495, at *5 (S.D.Ohio 2010), *adopted by* 2010 WL 3909493 (S.D.Ohio 2010).

At issue are the "severe" impairment findings and RFC findings set forth in the earlier decision dated June 16, 2000.  Plaintiff claims that the ALJ should have conducted an analysis under Drummond.  The undersigned disagrees.  Unlike Drummond, where the Administrative Law Judge decisions addressed contiguous time periods, there is a very substantial rift of 15 years that separates the end of one adjudicated period, May 31, 1998, and the beginning of the other adjudicated period, September 30, 2013. [2]  Additionally, during at least seven of the 15 years that separate the two adjudicated periods, Plaintiff worked as a self-employed house cleaner and

---

2 The June 16, 2000 decision addressed the period of October 10, 1996 (the original alleged onset date) through May 31, 1998, because an earlier state agency determination that Plaintiff's disability began on May 21, 1998 and she was eligible for SSI benefits on June 1, 1998 (Tr. 89).  By contrast, the ALJ's decision dated July 6, 2016 addressed the period of September 30, 2013 through July 6, 2016 (Tr. 15-26).

garage sale owner/operator (Tr. 386, 423). Further, a total of 16 years separates the two decisions. There is no indication in Drummond and its progeny that the Sixth Circuit ever envisioned such an exploitation of the principles of res judicata.

But even if the ALJ had erred by failing to conduct a Drummond assessment, the error would be harmless. There is substantial evidence in the record demonstrating a significant improvement in Plaintiff's condition during the years that separate the two adjudicated periods. Specifically, Plaintiff worked as a self-employed house cleaner and garage sale owner/operator from July 2006 to September 2013 (Tr. 386, 423). [3] Moreover, there is no medical evidence in the current administrative record that even sets forth a diagnosis of borderline personality disorder and borderline intellectual functioning. In fact, Ollie C. Dennis, Ed. D., performed a thorough consultative psychological evaluation on June 9, 2014, and diagnosed Plaintiff with a depressive disorder as well as an anxiety disorder (Tr. 821-22).

In sum, Plaintiff's challenges to Finding Nos. 3 and 5 must fail. These findings comport with applicable law and are supported by substantial evidence in the record.

B

1. Plaintiff's Argument

Next, Plaintiff claims that Finding No. 4 is not supported by substantial evidence because the ALJ's determination as to listing 1.03 was based on a misinterpretation of the term "ineffective ambulation" which is defined in section 1.00B2b (DN 15 PageID # 1570-72). She explains that the ALJ focused solely on her need for a walker or two crutches (Id.). Plaintiff contends that the definition in section 1.00B2b is far broader than the need to use a walker, two crutches, or two

---

3 Apparently, Plaintiff qualified to apply for DIB because of the FICA taxes she paid on her earnings (Tr. 287, 290).

canes (Id.). Plaintiff points out that section 1.00B2b includes "the inability to walk a block at a reasonable pace on rough or uneven surfaces;" "the inability to carry out routine ambulatory activities, such as shopping and banking," and the "inability to climb a few steps at a reasonable pace with the use of a single hand rail." Additionally, Plaintiff observes that section 1.00B2b indicates that "[t]he ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." Plaintiff points out that consultative examiner Dr. Eric Van Bogaert opined that she was not capable of walking more than 10 to 15 feet without a cane (Tr. 1017). Plaintiff also cites other evidence in the record regarding her difficulties with walking (DN 15 PageID # 1571-72).

2. Defendant's Argument

Defendant contends that the ALJ properly determined that Plaintiff did not meet listing 1.03 (DN 18 PageID # 1583-86). Defendant explains that Plaintiff failed to satisfy her burden of demonstrating that she was unable to ambulate effectively (Id.). Defendant identifies the evidence in the record that supports the ALJ's finding that Plaintiff could ambulate effectively despite experiencing brief periods of ineffective ambulation following each knee replacement surgery (Id.).

2. Discussion

At the third step, a claimant has the burden of demonstrating that she has an impairment that meets or medically equals a listing in Appendix 1. *See* 20 C.F.R. § 404.1520(d); Burgess v. Sec'y of Health & Human Servs., 835 F.2d 139, 140 (6th Cir. 1987). To meet a listing in Appendix 1, the medical records regarding the impairment must satisfy both the diagnosis and

severity requirements for the listing. Social Security Ruling 96-5p; 20 C.F.R. § 404.1525(d); Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984).

The listing at issue reads as follows:

> 1.03 *Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint*, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1, listing 1.03. At issue is the following definition:

> *b. What We Mean by Inability To Ambulate Effectively*
>
> (1) *Definition*. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00B2b(1) and (2). Ultimately, Plaintiff bears the burden of establishing that she is disabled under listing 1.03.

In pertinent part, the ALJ's decision reads as follows:

> The representative has argued that the claimant's reconstructive knee surgery satisfies listing 1.03 arguing that the claimant is unable to ambulate effectively and that such limitation has lasted for 12 or more months. Section 1.00B2b explained that examples of ineffective ambulation included the need to use a walker, 2 crutches or 2 canes while ambulating. Despite the claimant's testimony to the contrary, the undersigned does not find, except for a short period of time while recovering from the knee surgery, that the claimant had to use a walker while ambulating. Instead, the weight of the evidence indicates that the claimant was ambulating with a single cane and Social Security Ruling 96-9p explain [sic] that the use of a single cane does not preclude sedentary work activity. After a careful review, the Administrative Law Judge finds that the claimant does not have any physical impairment that meets or equals the requirements of any section of Appendix 1.

(Tr. 18). Contrary to Plaintiff's claim, the ALJ adequately explained why Plaintiff did not meet listing 1.03. The ALJ discounted Plaintiff's subjective complaints about an inability to walk because substantial medical evidence in the record indicated otherwise. Notably, in connection with the residual functional capacity assessment, the ALJ provided an in depth explanation of the objective medical evidence in the record and why she discounted: Plaintiff's subjective complaints about the inability to walk; several references in the medical record about Plaintiff arriving in a wheelchair; and Plaintiff's alleged need to use a cane when ambulating (Tr. 20-24). Further, in connection with the residual functional capacity assessment, the ALJ sufficiently articulated good reasons for discounting Dr. Van Bogaert's opinion that a cane was medically necessary (Tr. 23). Review of the record reveals that Finding No. 4 is supported by substantial evidence and comports with applicable law.

C

Finally, Plaintiff challenges Finding Nos. 10 and 11 (DN 15 PageID # 1573). Defendant contends they are supported by substantial evidence (DN 18 PageID # 1586).

In Finding No. 10, the ALJ relied on testimony from the vocational expert to conclude that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform considering her age, education, work experience and residual functional capacity (Tr. 25-26). Finding No. 11 sets forth the ALJ's conclusion that Plaintiff has not been under a disability, as defined by the Act, from September 30, 2013, through the date of the decision, July 11, 2016 (Tr. 26).

It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."). Here, Plaintiff has merely indicated that Finding Nos. 10 and 11 are not supported by substantial evidence "for the reasons above stated" (DN 15 PageID # 1573). Clearly, Plaintiff has adverted to both claims in a perfunctory manner. Because Plaintiff has failed to substantiate her claims with developed argument, they are deemed waived.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

Copies: Counsel